UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| JOEY B. GRAVES, SR.<br>5605 Davey Street<br>Capitol Heights, Maryland 20743<br><br>   *Plaintiff,*<br> v.<br><br>THE NATURE CONSERVANCY<br>4245 North Fairfax Drive, Suite 100<br>Arlington, Virginia 22203-1606<br><br>   *Defendant.* | Civil Action No.: 8:20-cv-03302<br><br>Jury Trial Demand |

## COMPLAINT

Comes now Plaintiff Joey Graves (hereinafter "Plaintiff Graves", "Plaintiff" or "Mr. Graves") by and through his attorneys, and hereby files this Complaint against Defendant The Nature Conservancy (hereinafter "Defendant The Nature Conservancy", "Defendant" or "The Nature Conservancy"). Plaintiff Graves seeks relief pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

### Jurisdiction and Venue

1. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S. Code § 1331 and 28 U.S. Code § 1343(a)(3) as this matter contains a federal question.

2. Venue is proper in this court pursuant to 28 U.S.C. § 1391(a)(1) and (b)(2) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

### Parties

1

3. Plaintiff Graves is an African American male, a citizen of the United States and a resident of the State of Maryland. Plaintiff Graves was employed as a Senior Payroll Specialist at The Nature Conservancy.

4. The Nature Conservancy is an environmental nonprofit organization in Arlington, Virginia.

**Facts**

5. Plaintiff Graves was hired as a Senior Payroll Specialist at The Nature Conservancy in October 2013. As a Senior Payroll Specialist, Mr. Graves was responsible for various payroll processing and post processing tasks which included but was not limited to creating pay sheets, process and confirming payrolls, processing termination and vacation payments, running payroll calculations and reviewing error reports, preparing wage/tax deduction reports, serving as payroll functional lead in partnership with payroll business analysis to troubleshoot issues and implement tax updates within the PeopleSoft program, partnering with KPMG to process global assignee wage / tax changes, preparing year end information, quarterly audits, and mailing. In addition, Mr. Graves had the responsibility of training Joyce Sherrod in the payroll processes. Throughout his tenure until he filed an internal complaint, Mr. Graves received positive performance reviews with the overall rating of "Meets Fully" for fiscal years 2014-2016 and 2018-2019. Mr. Graves most recently reported to Nichole Barta, a Caucasian female, and the Senior Manager of Benefits and Payroll.

6. Mr. Graves was initially supervised by Payroll Manager Garry Jones (African American) until Mr. Jones' termination on May 1, 2019, after twelve years of dedicated work in his position at The Nature Conservancy. In March 2019, Rebecca Brake, Managing Director, Global HR Ops (Caucasian female) announced an organization restructure under the leadership of Michael Tetreault, Chief People Officer, and plans to abolish Mr. Jones' Payroll Manager position and to

replace with a Senior Manager Benefit/Payroll position.  Mr. Jones was told that he could not apply for the position because he did not have Benefits experience and that he did not have the "skill set" for the position. This organization restructuring eliminated only Mr. Jones' position on May 1, 2019.

7.      Prior to his termination, Mr. Jones participated fully in the day to day processing of the Payroll.  After his termination, Mr. Jones' former duties were passed down to two African American employees, Mr. Graves, and Ms. Sherrod. The transfer of Mr. Jones' duties to Mr. Graves and Ms. Sherrod became permanent and Mr. Graves' job description was adjusted to reflect the additional duties. When Mr. Graves asked about compensation for the additional duties of a fulltime Payroll Manager, Mr. Graves was told, "This is something you should have been doing all the time." Additionally, during Mr. Jones' tenure with The Nature Conservancy, there was a request made for support for the Payroll team and the team was told to train Amy Stamish who worked with Benefits and Human Resources. This demonstrated that the Payroll Department needed help even when Mr. Jones was still participating in the day to day activities of processing payroll. For two months and four payroll cycles, the Payroll team under Mr. Graves' leadership, processed the four payrolls successfully and an efficient manner. This was also noted by Ms. Brake in Mr. Graves' 2019 Review.

8.      The position of the Senior Manager of Benefits and Payroll was filled by Ms. Nichole Barta, a Caucasian female who was hired June 24, 2019 by Rebecca Brake. As the Senior Manager Benefits/Manager, Ms. Barta became Mr. Graves' supervisor. Although Mr. Jones was denied an opportunity to apply for the Senior Manager of Benefits and Payroll allegedly because he allegedly did not have the skillset for the position, Ms. Barta admitted to staff that she did not possess the knowledge, nor the skill set for this position and did not have much Payroll or Benefits experience.

In a meeting "To get to know Nichole" in Ms. Barta's first thirty days of employment, with at least twenty-five employees present in the room, the question came up to Ms. Barta, "Where did you work/practice your Benefits experience?" Ms. Barta replied, "I don't really have much Benefits experience, I don't know why Becky (Rebecca Blake) has so much confidence in me."

9. After she began employment, none of the managerial duties that were previously assigned to Mr. Graves and Ms. Sherrod after Mr. Jones' departure were reassigned to Mr. Barta. Ms. Barta held the title of Senior Manager of Benefits and Payroll to exercise control over the Payroll team to delegate work. This caused a major increase of Mr. Graves' workload, which now encompassed 80% of the work Mr. Jones previously performed. Mr. Graves also began to be subject to harassment and singled out by Ms. Barta. Mr. Tetreault, who had not worked with Ms. Barta stated that he had confidence Ms. Barta and he was backing her. Yet, Mr. Graves had worked at The Nature Conservancy for six years and had good performance reviews and was leading the Payroll team for two months when they did not have a Payroll Manager during the months of May and June of 2019. Mr. Graves absorbed many of Mr. Jones responsibilities and duties and Mr. Graves' commitment and dedication to the success of the Payroll team was consistent. Despite this, Mr. Graves did not receive an increase nor a bonus for his efforts in 2019. Mr. Graves has observed over the years that The Nature Conservancy normally compensates its Caucasian employees that contribute to additional or temporary work assignments. An example of such action was when Mr. Tetreault's Executive Assistant aided an assignment helping another executive for a month or so while the position was vacant. Mr. Tetreault's assistant, who is a Caucasian female, received a bonus for her efforts.

10. In September 2019, Mr. Graves raised an issue with Ms. Barta and Human Resources Representative Felicia Green on how Ms. Barta had been with The Nature Conservancy

4

approximately three months and was managing a team of seven employees, four of which were Caucasian and three of which were African American and how Ms. Barta allowed the four Caucasian employees to have "work from home" days on their schedule every week while the African American employees did not have "work from home" days. Ms. Barta claimed that reason was because the employees had performance issues. Mr. Graves recognized however, that the performance issues Ms. Barta claimed as the rationale for the disparate "work from home" days, stemmed from one employee, Ms. Sherrod. Ms. Sherrod's performance was expected since the team lost one full time employee and did not receive any help to cover the increased workload. Additionally, during a regular Payroll process which went a little longer than the preferred time to process, Ms. Barta called a meeting to discuss what could be done to speed up the process of completing the Payroll within the preferred time. The outcome of this meeting was to transfer one of Ms. Sherrod's processes, the termination report/process, to Joyce Singleton.

11.     In September and October of 2019, Mr. Graves complained to Human Resources regarding Mr. Barta's treatment and discrimination.  After Mr. Graves' complaint, Ms. Barta retaliated against him and created a hostile environment for him. She singled him out in front of his colleagues, treated him totally different from the other staff members and had a completely different set of standards for Mr. Graves and it was allowed by her managerial leadership.

12.     In November 2019, an Ethics and Compliance complaint was opened. Ms. Barta was told not to have one on one meetings with Mr. Graves during the Ethics and Compliance investigation. Mr. Graves began working remotely from his home in Maryland in March 2020. On March 20, 2020, the outcome of the Ethics and Compliance investigation was announced which excused Ms. Barta's conduct.

13. Approximately one month later, on April 24, 2020, Ms. Barta placed Mr. Graves on a Performance Improvement Plan ("PIP"). The information Ms. Barta placed in the PIP was false and the charges were made against Mr. Graves when he was never asked about or spoken to about prior to the issuing of the PIP. The PIP was scheduled to end June 30, 2020. Mr. Graves continued to perform his job in a professional manner during the PIP and The Nature Conservancy continued to utilize his skills up to the final date of his employment. Despite his performance, Ms. Barta, with the support of Ms. Brake and Mr. Tetreault, approved the termination of Mr. Graves. Even in his final week of work, Mr. Graves had to resolve two issues. Mr. Graves had to inform the Payroll team member of the correct action and how to correct the action. On July 23, 2020, Mr. Graves was informed that he was being terminated effective July 31, 2020 and he was offered severance pay.

14. This is not the only instance that African American employees have been subjected to discriminatory treatment at The Nature Conservancy. Mr. Tetreault has, in less than five years, allowed terminations of a number of professional African American employees. One additional example occurred in February 2018 when Mr. Tetreault allowed Sara Meyer, the Director of Human Recourses and a Caucasian female, who was retiring on February 7, 2018, to terminate Noelle Cherubim, Human Recourses Manager, an African American manager on February 10, 2018. Less than one year at the job, Ms. Barta, under Ms. Brake and under Mr. Tetreault, placed two employees on PIPs, both African Americans and terminated one African American male, Mr. Graves. In less than one year of service with the Nature Conservancy, Ms. Barta placed two African American staff members on PIPs; two staff members who exercised their rights to speak to Ethics and Compliance regarding the difference in treatment that was being done by Ms. Barta to her staff. Felecia Green was the other employee who went to Ethics and Compliance. Ms. Green

6

felt strong enough to go to Ethics and Compliance, but after Mr. Tetreault made it known that he was going to support Ms. Barta, Ms. Green believed that she was simply going through the motions in filing the complaint.

**COUNT I**
**Violation of Title VII of the Civil Rights Act of 1964**
**as amended, 42 U.S.C. § 2000e *et seq.***
**(Race Discrimination)**

15. Plaintiff Graves realleges and incorporates by reference paragraphs 1 through 14 above as if set forth fully herein.

16. At all pertinent times, Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

17. At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

18. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) *et seq.*, prohibits discrimination in employment based on an individual's race with respect to an employee's compensation, terms, conditions, or privileges of employment.

19. Defendant, in violation of Title VII of the Civil Rights Act, knowingly and intentionally engaged in unlawful discrimination against Mr. Graves when Mr. Graves was treated differently than employees outside of his protected class when he was given 80% of the duties previously performed by Mr. Jones without additional compensation; was denied an opportunity to work from home which was provided to his Caucasian colleagues; was held to different workload and performance standards than his Caucasian co-workers; was placed on a performance improvement plan; and was terminated from employment on July 23, 2020, effective July 31, 2020.

20. Plaintiff Graves was treated differently than his similarly situated Caucasian colleagues; Defendant failed to follow its own polices in taking action against Mr. Graves; and the reasons for the PIP and termination are false.

21. As a direct and proximate result of Defendant's actions, Plaintiff Graves suffered and continues to suffer, among other things, extreme pain, embarrassment and humiliation over losing his job.

22. Defendant had no legitimate business reason for any such acts. Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices.

## COUNT II
### Violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*
### (Retaliation)

23. Plaintiff Graves realleges and incorporates by reference paragraphs 1 through 22 above as if set forth fully herein.

24. At all pertinent times, Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

25. At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

26. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) *et seq.*, prohibits an employer from taking action against an employee because the employee engages in protected activity and reports acts of discrimination and/or opposes acts of discrimination.

27. Defendant, in violation of Title VII of the Civil Rights Act, knowingly and intentionally engaged in unlawful retaliation against Mr. Graves. After Mr. Graves raised an issue with Ms. Barta and Human Resources Representative Felecia Green in September 2019, and complained to

Human Resources in September and October of 2019 regarding Ms. Barta's treatment and discrimination, Ms. Barta retaliated against Mr. Graves when she created a hostile work environment against him; denied him an opportunity to work from home which was provided to his Caucasian colleagues; held him to different workload and performance standards than his Caucasian co-workers including singling him out in front of his colleagues; placed him on a performance improvement plan; and terminated him from employment on July 23, 2020 effective July 31, 2020.

28.     As a direct and proximate result of Defendant's actions, Plaintiff Graves suffered and continues to suffer, among other things, extreme pain, embarrassment and humiliation over losing his job.

29.     Defendant had no legitimate business reason for any such acts. Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other retaliatory practices.

## COUNT III
**Violation of Section 1981 of the Civil Rights Act of 1866**
**42 U.S.C. § 1981**
**(Race Discrimination)**

30.     Plaintiff Graves re-alleges and incorporates by reference paragraphs 1 through 29 above as if set forth fully herein.

31.     At all pertinent times, Defendant was an employer subject to provisions of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

32.     At all pertinent times, Plaintiff was an employee entitled to protection under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

33. Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, prohibits discrimination on the basis of race with respect to an employee's compensation, terms, conditions, or privileges of employment.

34. Defendant, in violation of 42 U.S.C. § 1981, knowingly and intentionally engaged in unlawful discrimination against Mr. Graves when Mr. Graves was treated differently than employees outside of his protected class when he was given 80% of the duties previously performed by Mr. Jones without additional compensation; was denied an opportunity to work from home which was provided to his Caucasian colleagues; was held to different workload and performance standards than his Caucasian co-workers; was placed on a performance improvement plan; and was terminated from employment on July 23, 2020, effective July 31, 2020.

35. Plaintiff Graves was treated differently than his similar situation Caucasian colleagues; Defendant failed to follow its own policies in taking action against Mr. Graves; and the reasons for the PIP and termination are false.

36. As a direct and proximate result of Defendant's actions, Plaintiff Graves suffered and continues to suffer, among other things, extreme pain, embarrassment and humiliation over losing his job.

37. Defendant had no legitimate business reason for any such acts. Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices.

### COUNT IV
### Violation of Section 1981 of the Civil Rights Act of 1866
### 42 U.S.C. § 1981
### (Retaliation)

38. Plaintiff Graves re-alleges and incorporates by reference paragraphs 1 through 37 above as if set forth fully herein.

39. At all pertinent times, Defendant was an employer subject to provisions of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

40. At all pertinent times, Plaintiff was an employee entitled to protection under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

41. Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 prohibits retaliation against an employee for, inter alia, complaining of or otherwise opposing discrimination based on race.

42. Defendant, in violation of 42 U.S.C. § 1981, knowingly and intentionally engaged in unlawful retaliation against Mr. Graves. After Mr. Graves raised an issue with Ms. Barta and Human Resources Representative Felecia Green in September 2019, and complained to Human Resources in September and October of 2019 regarding Ms. Barta's treatment and discrimination, Ms. Barta retaliated against Mr. Graves when she created a hostile work environment against him; denied him an opportunity to work from home which was provided to his Caucasian colleagues; held him to different workload and performance standards than his Caucasian co-workers including singling him out in front of his colleagues; placed him on a performance improvement plan; and terminated him from employment on July 23, 2020, effective July 31, 2020.

43. As a direct and proximate result of Defendant's actions, Plaintiff Graves suffered and continues to suffer, among other things, extreme pain, embarrassment and humiliation over losing his job.

44. Defendant had no legitimate business reason for any such acts. Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other retaliatory practices.

### Prayer for Relief

WHEREFORE, Plaintiff prays as follows:

A. That the Court issue an Order declaring Defendants' actions to be a violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*., and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and declaring Plaintiff eligible to receive equitable and other relief;

B. Enter judgment against Defendant;

C. Issue a permanent injunction prohibiting Defendant from engaging in any discriminatory terminations and retaliation;

D. Enter judgment in favor of Plaintiff against Defendant for all monetary damages available under the law, including but not limited to treble damages, in amounts to be determined at trial;

E. Order Defendant to refrain from any retaliation against Plaintiff or any other person, for participating in or supporting this case in any manner;

F. Order Defendant to pay compensatory and punitive damages in amounts to be determined at trial;

G. Order Defendant to pay Plaintiff for lost wages;

H. Order Defendant to pay Plaintiff's reasonable attorneys' fees, expert fees, and costs;

I. Order Defendant to pay pre-judgment and post-judgment interest as provided by law; and

J. Grant any other relief the Court deem appropriate under the law.

Date: November 13, 2020              Respectfully submitted,

                                     */s/ David Branch*
                                     David A. Branch, Maryland Bar No.: 22862
                                     Law Offices of David A. Branch & Associates, PLLC
                                     1828 L Street, NW, Suite 820
                                     Washington, DC 20036
                                     Phone: (202) 785-2805
                                     Fax: (202) 785-0289
                                     davidbranch@dbranchlaw.com

## Jury Trial Demand

Plaintiff demands a jury trial on all counts.